WILLIAM BLUMENTHAL
General Counsel

TRACY S. THORLEIFSON
MARY T. BENFIELD
Federal Trade Commission
915 Second Avenue, Suite 2896
Seattle, WA 98174
Phone: (206)220-6350
Facsimile: (206) 220-6366

BLAINE T. WELSH
Assistant United States Attorney
333 Las Vegas Blvd, South, Suite 5000
Las Vegas, NV 89101
Phone (702) 388-6336

Attorneys for Plaintiff
Federal Trade Commission

# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| FEDERAL TRADE COMMISSION,<br><br>    Plaintiff,<br><br>    v.<br><br>INTERBILL, LTD., and THOMAS WELLS, individually and as an officer or director of InterBill,<br><br>    Defendants. | CV-S-06-<br><br>COMPLAINT FOR INJUNCTION AND OTHER EQUITABLE RELIEF |

Plaintiff, the Federal Trade Commission ("the FTC" or "the Commission"), for its complaint alleges:

1. The FTC brings this action under Sections 5(a) and 13(b) of the Federal Trade Commission Act ("FTC Act"), 15 U.S.C. §§ 45(a) and 53(b), to obtain permanent injunctive relief, rescission or reformation of contracts, restitution, disgorgement, and

other equitable relief in connection with defendants' unauthorized debiting of consumers' checking accounts, which constitutes an unfair act or practice in violation of Section 5(a) of the FTC Act, 15 U.S.C. § 45(a).

## JURISDICTION AND VENUE

2. Subject matter jurisdiction is conferred upon this Court by 15 U.S.C. §§ 45(a) and 53(b), and 28 U.S.C. §§ 1331, 1337(a), and 1345.

3. Venue in the District of Nevada is proper under 15 U.S.C. § 53(b) and 28 U.S.C. §§ 1391(b) and (c).

## PLAINTIFF

4. Plaintiff Federal Trade Commission is an independent agency of the United States Government created by statute. 15 U.S.C. §§ 41 *et seq*. The Commission enforces Section 5(a) of the FTC Act, 15 U.S.C. § 45(a), which prohibits unfair or deceptive acts or practices in or affecting commerce. The Commission may initiate federal district court proceedings by its own attorneys to enjoin violations of the FTC Act and to secure such equitable relief as may be appropriate in each case, including restitution for injured consumers and disgorgement of ill-gotten monies. 15 U.S.C. § 53(b).

## DEFENDANTS

5. Defendant InterBill, Ltd., is a limited liability company organized under the laws of the British Virgin Islands. It is engaged in the business of providing payment processing services to merchants, including those considered "high risk" by the payment processing industry, such as online gaming and mail and telephone marketing. InterBill's principal place of business is located at 3770 Bombastic Court, Las Vegas, Nevada, 89147. InterBill engages in and transacts business in this district.

6. Defendant Thomas Wells is an officer or director of InterBill. At all times material to this complaint, acting alone or in concert with others, he has formulated, directed, controlled, or participated in the acts and practices of InterBill, including the acts and practices set forth in this complaint. Wells engages in and transacts business in this district.

## COMMERCE

7. At all times relevant to this complaint, defendants have maintained a substantial course of trade in or affecting commerce, as "commerce" is defined in Section 4 of the FTC Act, 15 U.S.C. § 44.

## DEFENDANTS' BUSINESS PRACTICES

8. Between at least January and March 2004, defendant InterBill debited, or tried to debit, more than $9.9 million from consumers' bank accounts without those consumers' authorization, thereby causing substantial injury. InterBill made these debits – $139 each – in connection with providing payment processing services to a fraudulent enterprise known as Pharmacycards.com., which had initiated the unauthorized debits. Consumers could not have reasonably avoided this injury because they did not know about or authorize the debits to their accounts, and had no advance notice of defendants' intention to debit their accounts. The harm caused by InterBill's unauthorized debiting of consumers' accounts was not outweighed by countervailing benefits to consumers or to competition.

9. Pharmacycards purported to be a bona fide telemarketing business that sold medical discount cards to consumers. In fact, the product did not exist. Pharmacycards' "business" involved nothing more than assembling lists of consumers' bank account numbers and debiting them. Some consumers received a direct mail solicitation from Pharmacycards.com <u>after</u> their accounts were debited. The letter described the purported pharmacy discount card program and stated that consumers not interested need only call

COMPLAINT, FTC v. InterBill, Page 3 of 7

customer service and cancel within five days of receipt of the letter to avoid being charged. By the time the consumers received the letter, their accounts had already been debited. Most consumers did not even receive a letter, however, and their accounts were simply debited without their knowledge or permission.

10. Using consumers' name and bank account information provided by the Pharmacycards perpetrators, defendant InterBill arranged for the production of "remotely created checks," or "demand drafts," and submitted them for deposit into a designated account in InterBill's name at Wells Fargo Bank. Demand drafts are paper checks imprinted by a third party with the name and bank account number of a consumer, but not signed by that consumer. Such drafts are deposited into the banking system and processed like ordinary checks. Even though more than 70% of the attempted demand draft transactions were "returned," or refused by the consumers' banks, more than $2.38 million was debited from consumers' accounts and paid to InterBill.

11. InterBill agreed to process demand drafts for Pharmacycards despite indications that the operation was likely fictitious and that payments submitted for processing by Pharmacycards were not authorized by consumers. Indeed, at one point the Pharmacycards operators told defendant Thomas Wells that consumers were being billed prior to receiving any information from Pharmacycards. The fraudulent Pharmacycards scheme purported to offer U.S. consumers a discount prescription benefits card but the Pharmacycards operators did not provide the defendants with references demonstrating experience with the U.S. prescription benefits field.

12. The Pharmacycards principals provided a London, England mail drop as a business address and conducted all their business by pre-paid, virtually untraceable cellular phones and free, anonymous email and facsimile accounts. The Pharmacycards website provided a toll-free customer service number that was answered at a call center in Montreal, Quebec, Canada and a fake address in British Columbia, Canada. Finally, the Pharmacycards operators used the identity of a Cyprus corporation and directed that their funds be wired to a Cyprus bank account, a known tax haven.

13. InterBill failed to follow its own guidelines regarding the information to be collected from new merchants prior to initiating processing for Pharmacycards. For example, Wells, acting on InterBill's behalf, neither asked for nor checked business or individual references. He did not obtain copies of the alleged direct mail offer. He did not request or review information about the business' operations or its expertise in direct mail or discount prescription offerings. He did not verify a physical address for the individuals or the company.

14. From the start of its dealings with Pharmacycards, InterBill anticipated high rates of returned or reversed transactions, a sign that unauthorized debits to consumers' accounts were likely. In an email to one of the Pharmacycards operators, defendant Wells stated that, "[g]oing into this project we discussed 40-45% being the max [return rate] we could tolerate with this project." Despite the likelihood of high rates of returned transactions, InterBill did not request or obtain proof that consumers had authorized Pharmacycards to debit their accounts.

15. Shortly after beginning to process demand drafts on behalf of Pharmacycards, defendant InterBill received additional information that Pharmacycards was not a legitimate business and that the Pharmacycards transactions were, in fact, <u>not</u> authorized. InterBill quickly began to receive consumer and bank complaints concerning unauthorized debits, and rates of returned transactions sky-rocketed. InterBill also learned of the high volume of unauthorized debit complaints from Pharmacycards' customer service operation, a Montreal, Quebec company, Customer Care Relations, operated by Neil Haboush.

16. Despite these early signs of problems with the Pharmacycards transactions, InterBill continued processing demand drafts for the fraudulent Pharmacycards operators.

17. Only belatedly, a month into processing, did defendant Wells ask the Pharmacycards operators for information on the source of the database providing consumers' checking account numbers, and request evidence that consumers had

received the packages for which they were billed. Even though Wells did not receive answers to these questions, or received only incomplete answers, InterBill continued to make unauthorized debits of consumers' bank accounts in the name of Pharmacycards.

## VIOLATIONS OF SECTION FIVE

18. Section 5(a) of the FTC Act, 15 U.S.C. § 45(a), prohibits unfair or deceptive acts or practices in or affecting commerce. An act or practice is unfair if it "causes or is likely to cause substantial injury to consumers which is not reasonably avoidable by consumers themselves and not outweighed by countervailing benefits to consumers or to competition." 15 U.S.C. § 45(n).

19. Defendants' acts and practices in processing debit transactions to consumers' bank accounts, as described in Paragraphs 8-17 above, cause or are likely to cause substantial injury to consumers which is not reasonably avoidable by consumers themselves and not outweighed by countervailing benefits to consumers or competition and, therefore, constitute unfair acts or practices in violation of Section 5(a) of the FTC Act, 15 U.S.C. § 45(a).

## CONSUMER INJURY

20. Consumers throughout the United States have suffered substantial monetary loss as a result of the defendants' unlawful acts or practices. Absent injunctive relief by this Court, defendants are likely to continue to injure consumers and harm the public interest.

## THIS COURT'S POWER TO GRANT RELIEF

21. Section 13(b) of the FTC Act, 15 U.S.C. § 53(b), empowers this Court to grant injunctive and other ancillary relief to prevent and remedy any violations of any provision of law enforced by the Commission.

22. This Court, in the exercise of its equitable jurisdiction, may award other ancillary relief to remedy injury caused by defendants' law violations.

## **PRAYER FOR RELIEF**

WHEREFORE, plaintiff, Federal Trade Commission, requests that this Court, as authorized by Section 13(b) of the FTC Act, 15 U.S.C. § 53(b), and pursuant to its own equitable powers:

a. Enter a permanent injunction to prevent future violations of the FTC Act by defendants;

b. Enter judgment against defendants and in favor of plaintiff for the violations alleged in this Complaint;

c. Award such relief as the Court finds necessary and appropriate, including but not limited to, rescission of contracts, the refund of monies paid, and the disgorgement of ill-gotten monies and interest thereon by defendants; and

d. Award plaintiff the costs of bringing this action, as well as such other and additional relief as the Court may determine to be just and proper.

Dated: 12-26-06

Respectfully Submitted,
WILLIAM BLUMENTHAL
General Counsel

Tracy S. Thorleifson
Mary T. Benfield
Federal Trade Commission

Blaine T. Welsh
Assistant United States Attorney

Attorneys For Plaintiff
Federal Trade Commission