Theodore F. Monroe (*pro hac vice* forthcoming)
Law Offices of Theodore F. Monroe
800 West 6th Street, Suite 500
Los Angeles, CA 90017
t: 213-233-2272
f: 213-622-1444
monroe@tfmlaw.com

J. Malcolm DeVoy (Nevada Bar No. 11950)
Erica A. Bobak (Nevada Bar No. 13828)
DeVoy Law P.C.
2575 Montessouri Street, Suite 201
Las Vegas, NV 89117
t: 702-706-3051
f: 702-977-9359
ecf@devoylaw.com

*Attorneys for Defendant Thomas Wells and*
*Third Party Priority Payout, Corp.*

UNITED STATES DISTRICT COURT
DISTRICT OF NEVADA

| | |
|---|---|
| FEDERAL TRADE COMMISSION,<br><br>    Plaintiff,<br><br>v.<br><br>INTERBILL, LTD., and THOMAS WELLS, individually and as an officer or director of InterBill,<br><br>    Defendants. | Case No.: 2:06-cv-01644-JCM-PAL<br><br>**EMERGENCY MOTION FOR PROTECTIVE ORDER TO STAY DEPOSITIONS OF THOMAS WELLS AND PRIORITY PAYOUT, AND STAY FURTHER DISCOVERY AND PROCEEDINGS** |

**EMERGENCY MOTION FOR PROTECTIVE ORDER TO STAY DEPOSITIONS OF THOMAS WELLS AND PRIORITY PAYOUT, AND STAY FURTHER DISCOVERY AND PROCEEDINGS**

Defendant Thomas Wells and Third Party Priority Payout, Corporation each a "Defendant," and collectively the "Defendants" for the purposes of this motion, submit this motion to stay their noticed depositions and all further proceedings in this action until the earlier of the underlying criminal action, explained below, or 180 days from the date of this Court's

order. These defendants move on an emergency basis to Stay the Depositions of Thomas Wells and Priority Payout, Corporation scheduled for October 11 and 12, 2018 until resolution of the substantive Motion. This Motion is being submitted pursuant to Local Rules 7-4 and 26-7, as well as Fed. R. Civ. P. 26(c) and (d). This Motion is made and based on the Memorandum of Points and Authorities, the pleadings and papers on file herein, the Declaration of Theodore F. Monroe, Esq. (attached hereto as "Exhibit 1"), the exhibits attached hereto, and any oral argument this Court may allow.

**MEMORANDUM OF POINTS AND AUTHORITIES**

Defendant Thomas Wells ("Wells") and his solely owned corporation, Priority Payout, Corporation ("PPC") respectfully request that the Court stay any proceeding in the above-titled action, including the pending depositions of Wells and PPC. The Court should grant the Defendants' motion due to the overlap between the facts in the FTC's action of contempt in this lawsuit and a pending federal criminal investigation. Wells should not have to choose between defending a civil contempt action and thus waiving his rights to incriminate himself or, alternatively, exercising his Fifth Amendment protections in this action but forgoing any defense of it due to the exercise. As explained below, this case satisfies all of criteria for a pre-indictment stay as set forth in relevant precedent. Wells and PPC request that this Court delay the currently scheduled October 11 and 12 depositions on an emergency basis until a hearing on the substantive motion. Further, for the sake of judicial economy, the Court should grant Wells and PPC's request to stay further proceedings in this action for the shorter period of either the conclusion of criminal proceedings against Wells and PPC, or six months from the date of the Court's order on this motion.

**I. BACKGROUND**

    **A. FTC's original action**

On December 26, 2006, the FTC filed a complaint against Wells and a company he owned, InterBill, Limited. (ECF No. 1). Subsequently, Wells entered into a settlement with the FTC that resulted in a final injunction on April 30, 2009. (April 30, 2009 Final Injunction) As

EMERGENCY MOTION TO STAY DEPOSITIONS AND FURTHER PROCEEDINGS - 2

part of the final injunction, entered, April 30, 2009, Wells agreed that the FTC "is authorized, without further leave of Court, to obtain discovery from any person in the manner provided by Chapter V of the Federal Rules of Civil Procedure, Fed. R. Civ. P. 26-37, including the use of compulsory process pursuant to Fed. R. Civ. P. 45, for the purpose of monitoring and investigating defendants' compliance with any provision of this Order". (April 30, 2009 Final Injunction).

### B. FTC's contempt proceedings

On February 27 and 28, 2018, the Federal Trade Commission contacted Wells informing him that it would soon would seek documents and testimony from Wells regarding his relationship with Allied Wallet. (Declaration of Theodore F. Monroe "Monroe Decl." ¶ 5(b).) On March 20, 2018, the FTC noticed the depositions of Wells and Priority Payout for May of 2018. (Monroe Decl. ¶ 5(b).)

Subsequently, the FTC and Wells agreed to an interview in lieu of a deposition in an attempt to avoid the necessity of any depositions. (Monroe Decl. ¶ 5(b)ii and iii.) Prior to this interview, Wells and PPC produced documents to the FTC. (Monroe Decl. ¶ 5(b) ii.) On June 13, 2018, the FTC interviewed Wells. (Monroe Decl. ¶ 5(b) iii.) Prior to the interview, counsel for Wells and PPC specifically asked if any parallel criminal investigation existed into Wells or PPC. (Monroe Decl. ¶ 5(b)iii.) The FTC represented it was aware of no such investigation. (Monroe Decl. ¶ 5(b)iii.) After the interview, the FTC again stated that it was not aware of any ongoing criminal investigation into Wells or PPC, and that it had no intent of making a referral for criminal investigation against the movants. (Monroe Decl. ¶ 5(b)ii.)

Following the interview, the FTC staff informed counsel for Wells and PPC that, based upon the disclosures and the interview, it intended to seek an order of contempt against Wells and PPC for using their relationships with a payment processor, Allied Wallet, to allegedly aid merchants selling illegal products or engaging in deceptive marketing with entry into the credit and debit card payments system. (Monroe Decl. ¶ 5(b).) At the request of the FTC, and as part of the process to resolve the contempt issue, Wells and PPC made a financial disclosure to the

EMERGENCY MOTION TO STAY DEPOSITIONS AND FURTHER PROCEEDINGS - 3

FTC. (Monroe Decl. ¶ 5(b)v.)

### C. Concurrent with the FTC's Latest Proceedings, the Government Begins a Criminal Investigation

Counsel for Wells and PPC first learned of a criminal investigation in a press report. Although the report is dated August 3, 2018, counsel for Wells and PPC learned of it on August 28, 2018. (Monroe Decl. ¶ 5(c)i and Aug. 3, 2018 article attached as Exhibit 2.) The report stated that a federal grand jury was investigating whether Allied Wallet helped merchants disguise illegal pharmaceutical transactions by using dummy corporations formed outside of the United States and fake websites to disguise the true nature of the merchants' underlying business. According to the article, investigators had asked Allied Wallet via a subpoena to hand over documents related to one of its customers, a UK-incorporated limited liability company called Beauty Skinn Ltd. According to the article, Visa had found months earlier that Beauty Skinn was hosting an illegal online pharmacy through the website found at <www.kamagrauk.com>. The article focused on Wells, stating that Beauty Skinn was one of six dummy companies that he brought to Allied Wallet in November of 2016. (Monroe Decl. ¶ 5(c)i-v and Exhibit 2.)

The documents Wells and PPC produced to the FTC prior to the June 13, 2018, interview included information relating to Beauty Skinn. Additionally, during the FTC's interview of Wells, the FTC had questioned Wells extensively about Beauty Skinn. (Monroe Decl. ¶ 5(c)iii.) Wells's counsel contacted the United States Attorney for the District of Massachusetts regarding the investigation referenced in the August 3, 2018 article on September 25, 2018. The government confirmed that Wells and PPC were subjects of an investigation relating to merchants that Wells allegedly referred to Allied Wallet. (Monroe Decl. ¶ 5(c)iv and Sept. 26, 2018 e-mail from AUSA Kosto, attached as Exhibit 3.)

When Wells's counsel inquired about the matter, the FTC denied coordinating with the United States Attorney's Office for the District of Massachusetts, or making a referral to that office. The FTC denied any coordination with that office, stating that the FTC had not spoken to the United States Attorney's office prior to the September 25, 2018 call it received from Wells's counsel. (Monroe Decl. ¶ 5(c)v.)

**D.   Wells and PPC Attempt to Resolve the Deposition Scheduling Issue with the FTC.**

Counsel for Wells and PPC spoke with the FTC on September 24, 2018, requesting that the FTC agree to delay the pending depositions. The FTC declined to do so. (Monroe Decl. ¶ 5(d)i.) Counsel again spoke with the FTC on September 25, and then, on September 26, via email, and requested again that the FTC delay the deposition, even offering to change the deposition to a more convenient location if it were delayed. (Monroe Decl. ¶ 5(d)ii-iv.) Counsel requested a short delay of several weeks so this motion would not need to be decided on an emergency basis. Later that day, the FTC responded by offering to delay the deposition one week in exchange for the change in the deposition location, and a commitment by Wells and PPC to attend such depositions if this Court did not enter an order excusing them to attend the depositions. (Monroe Decl. ¶ 5(d)ii-iv and Exhibit 4.)

Counsel would have brought this motion sooner, but it was not retained by Wells and his Corp to make an appearance in this action until the afternoon of September 26, 2018. (Monroe Decl. ¶ 6.) Local counsel admitted to practice before this Court was only retained even later than that date. Upon retaining counsel, Wells and PPC brought this motion as early as possible.

## II. LEGAL STANDARD AND ARGUMENT

This court has authority to stay civil proceedings "when the interests of justice seem to require such action." <u>Keating v. Office of Thrift Supervision</u>, 45 F.3d 322, 324 (9th Cir.1995). When faced with parallel criminal proceedings, the analysis should be undertaken "in light of the particular circumstances and competing interests involved in the case" and after consideration of the "extent to which the defendant's fifth amendment rights are implicated." <u>Id</u>. Additional factors to be considered, i.e., the "<u>Keating</u>" factors, include:

(1)   the interest of the Plaintiff in proceeding and the potential prejudice of delay;
(2)   the burden which the proceeding may place on Defendants;
(3)   the convenience of the Court in the management of its cases, and the efficient use of judicial resources;
(4)   the interests of third-parties to the civil action; and
(5)   the interest of the public in the pending civil and criminal litigation.

EMERGENCY MOTION TO STAY DEPOSITIONS AND FURTHER PROCEEDINGS - 5

1  Id. at 324-25; and Sec. & Exch. Comm'n v. Dresser Indus., 628 F.2d 1368, 1375 (D.C.Cir.1980) ("In the absence of substantial prejudice to the rights of the parties involved, [] parallel [criminal and civil] proceedings are unobjectionable under our jurisprudence.").

Simultaneous criminal and civil cases involving the same or closely related facts, however, may give rise to Fifth Amendment concerns sufficient to warrant a stay of the civil proceedings. "Courts are afforded th[e] discretion [to grant a stay] because the denial of a stay could impair a party's Fifth Amendment privilege against self-incrimination, extend criminal discovery beyond the limits set forth in Federal Rule of Criminal Procedure 16(b), expose the defense's theory to the prosecution in advance of trial, or otherwise prejudice the criminal case." Trustees of Plumbers & Pipefitters Nat'l Pension Fund v. Transworld Mech., Inc., 886 F. Supp. 1134, 1138 (S.D.N.Y.1995). The decision to stay a case requires an examination of the specific circumstances, taking into account the competing interests involved. See Sterling Nat'l Bank v. A-1 Hotels Int'l, Inc., 175 F.Supp.2d 573, 576 (S.D.N.Y.2001).

Generally, the need for a stay of parallel civil proceedings is strongest where the defendant has already been indicted. See In re Par Pharm., Inc. Sec. Litig., 133 F.R.D. 12, 13-14 (S.D.N.Y. Oct. 31, 1990). Nevertheless, numerous courts have granted pre-indictment stays of civil proceedings where the government is conducting parallel criminal and civil proceedings. See Walsh Secs., Inc. v. Cristo Prop. Mgmt., Ltd., 7 F. Supp. 2d 523, 527 (D.N.J. 1998) ("It is 'still possible' to obtain a stay, even though an indictment or information has not yet been returned, if the Government is conducting an active parallel criminal investigation.") (citing Milton Pollack, Parallel Civil and Criminal Proceedings, 129 F.R.D. 201, 203 (1989)).

Wells concedes that he has not yet been indicted, but this does not extinguish this Court's inquiry into whether a stay is appropriate, or preclude the Court's entry of any stay. This dispute demonstrates the rare circumstance of parallel investigations that warrant a stay. For example, in Brock v. Tolkow, the Secretary of Labor sued the defendants, trustees of a welfare fund governed by federal law, alleging that the defendants had violated ERISA. 109 F.R.D. 116 (E.D.N.Y. 1985). The trustee defendants sought a stay of the civil proceedings upon the ground

EMERGENCY MOTION TO STAY DEPOSITIONS AND FURTHER PROCEEDINGS - 6

that they had previously been served with grand jury subpoenas which indicated that the government was preparing to prosecute them for ERISA violations.

The <u>Brock</u> court granted the defendants a stay of the ongoing civil proceedings, citing a number of considerations supporting its decision. First, it noted that a stay "is most likely to be granted where the civil and criminal actions involve the same subject matter and is even more appropriate when both actions are brought by the government." <u>Id</u>. at 119 (citing <u>Dresser Indus</u>., 628 F.2d at 1376). Second, it found that a stay would not cause serious damage to the public interest because there were no allegations that plan beneficiaries were not receiving benefits, nor were there allegations of continuing or threatened injury that might result from the stay. See <u>Id</u>. at 120. Third, the government did not cite any evidence that might be lost if civil discovery was stayed, and the court observed that "the resolution of the criminal case might reduce the scope of discovery in the civil case or otherwise simplify the issues." <u>Id.</u>

Beyond those threshold concerns, the Brock court relied on other factors in making its decision. Fourth, the <u>Brock</u> court found that the public interests balanced against the defendants' Fifth Amendment protections weighed in favor of a stay because their decision to invoke their Fifth Amendment rights could greatly increase the chance that they would be found liable in the civil action. See <u>Id</u>. Finally, the court observed that while criminal prosecutions can take some time to complete, a stay would not necessarily delay enforcement of the public interests "because a criminal prosecution serves to enforce those same interests." <u>Id.</u> at 121. <u>See also</u> <u>S.E.C. v. Healthsouth Corp.</u>, 261 F.Supp.2d 1298, 1326 (N.D.Ala.2003) (granting a pre-indictment stay where the indictment was "an eventuality" and "the harm to defendant Scrushy from blindly pushing ahead with this matter [would] greatly outweigh the prejudice to the SEC from a stay of this civil proceeding").

The extent to which the issues in the criminal case overlap with those in the civil case, is regarded as "the most important factor" because "[i]f there is no overlap, then there would be no danger of self-incrimination and no need for a stay." <u>Metzler v. Bennett</u>, No. 97-CV-148 (RSP/GJD), <u>1998 WL 187454</u> at *6 (N.D.N.Y. Apr. 15, 1998) (citing <u>Transworld Mech</u>., 886

EMERGENCY MOTION TO STAY DEPOSITIONS AND FURTHER PROCEEDINGS - 7

F.Supp. at 1139). See also In re Adelphia Commc'ns Sec. Litig., No. 02-1781, 2003 WL 22358819 at * 3 (E.D.Pa. May 13, 2003) ("The similarity of the issues underlying the civil and criminal actions is considered the most important threshold issue in determining whether or not to grant a stay").

Based upon the reporting on Defendants' investigation and the information shared with their counsel by the United States Attorney for the District of Massachusetts, any forthcoming indictment will address claims and issues coextensive with those in the FTC's anticipated contempt proceedings before this Court. Both the FTC's contempt action and any criminal indictment center upon Wells and PPC allegedly providing false information to allow illegal businesses entry into the credit and debit card payment system, by—according to the government's theory—disguising the products sold by the merchants. Thus, the substantive factual and legal issues of any contempt proceedings and criminal indictment would be almost identical. As the Brock court wrote, "[a] stay of civil proceedings is most likely to be granted where the civil and criminal actions involve the same subject matter and is even more appropriate when both actions are brought by the government." 109 F.R.D. at 119. See also Cruz v. County of DuPage, 1997 WL 370194 at *3 (N.D. Ill. June 27, 1997) ("When both actions are brought by the government, there is a danger that the government may use civil discovery to obtain evidence and information for use in its criminal prosecution, and by doing so, circumvent the Fifth Amendment rights against self-incrimination"). Thus, overlapping issues under investigation civilly and criminally, with both proceedings brought by different arms of the government, supports the request for a stay of both the noticed depositions and all further proceedings in this matter.

This Court's adjudication of any FTC contempt action would implicate many, if not all, of the factual issues underlying the criminal action, and thus directly implicate the Fifth Amendment rights of Wells and PPC. Wells should not be forced to choose between abandoning the opportunity to defend against this civil action, and "courting liability in the criminal case" by waiving his Fifth Amendment rights. See Jones v. Conte, 2005 WL 1287017 at *1. (N.D. Cal.

Apr. 19, 2005). The movants' Fifth Amendment rights are directly implicated by the issues in the case, and no remedy exists that will allow him to both preserve these rights and defend this action, except a stay of the civil proceedings. This <u>Keating</u> factor weighs decidedly in favor of a stay.

Wells' ability to defend this action is already implicated by this motion. One of the factors the Court must consider when deciding a motion to stay parallel civil proceedings is the burden on the defendant. While this motion is supported by the attached declaration of counsel, Wells would have himself provided a supporting declaration if doing so would not have been construed as a waiver of his Fifth Amendment privilege. Not only does the specter of criminal investigation limit Wells's ability to participate in this action and any further proceedings by the FTC, the extent of Wells' burden cannot be fully articulated in support of this motion. If the civil depositions and other proceedings in this action are not stayed, Wells will immediately, next week, and well before any criminal trial is to take place, be faced with testimonial obligations. These include but are not limited to requests for admissions, interrogatories, and depositions all related to the same alleged merchant processing activities that are the basis of the criminal investigation.

Wells and PPC are faced, and will continue to be faced, with this impossible decision unless this Court intervenes. Their choices are untenable: they may either respond to discovery and testify in the civil case, in hopes of prevailing in that case while waiving their respective Fifth Amendment rights to remain silent in the criminal case; or, they may assert their Fifth Amendment rights against self-incrimination in the civil case, only to forego any chance of prevailing on the merits in this underlying action. If Wells or PPC assert their Fifth Amendment rights, whether in a deposition, interrogatory responses, or at trial, this will lead to an adverse inference by the finder of fact. <u>IBM v. Brown et al.</u>, 857 F. Supp. 1384, 1389 (C.D. Cal. 1994) (<u>citing</u> <u>Baxter v. Palmigiano</u>, 425 U.S. 308 (1976)). Such an untenable scenario can only be avoided by the Court's entry of a stay, allowing the criminal investigation to proceed without allowing it to be short-

circuited—and Wells's and PPC's Fifth Amendment rights abrogated—by the FTC's ongoing contempt proceedings. This is the exact scenario when a stay is appropriate.

### A. The Remainder of the Keating Factors Favor the Court Staying Further Proceedings.

#### 1. Any Prejudice to the FTC is Outweighed by Wells' Fifth Amendment Concerns

A stay of civil proceedings nearly always has the potential of working some prejudice to the plaintiff. Any such prejudice in this case, however, is outweighed by "the burden on [Defendants] of presenting [their] civil defense in a manner that protects [their] Fifth Amendment rights." McCormick v. Rexroth, 2010 WL 934242 *3 (N.D. Cal. Mar. 3 15, 2010). The party bringing the contempt action, the FTC, is a federal government agency whose interests are aligned with the Department of Justice.

Moreover, Wells and PPC are not seeking an "indefinite delay" in the proceedings. Instead, they only request the shortest possible period of either 180 days, or until resolution of the criminal action—whichever occurs first. Delaying the civil case will not prejudice the FTC's ability to access evidence, as Wells and PPC have already produced documents to the FTC, and the FTC has served a document preservation letter on the parties. As to adducing the live testimony of witnesses, the Department of Justice's grand jury proceedings have authority to take the testimony of relevant witnesses, and the FTC is free to interview them. Witnesses for the two criminal and civil proceedings are likely to include many, if not all, of the same people providing much of the same testimony should reduce the danger that any testimony will be lost as a result of the stay.

#### 2. Proceeding with This Action Severely Burdens Wells and PPC.

As described above, proceeding with this case will force Wells and PPC to choose between defending themselves in this action and preserving their Fifth Amendment rights with respect to a possible criminal indictment. The extreme prejudice that will result from forcing this choice upon Wells and PPC outweigh any purported prejudice to the FTC from a finite and brief delay in this matter.

EMERGENCY MOTION TO STAY DEPOSITIONS AND FURTHER PROCEEDINGS - 10

### 3. The Court's Convenience Weighs In Favor Of A Stay.

The Court has an interest in managing its cases efficiently. At the pre-indictment stage, the length of the stay is not of unknown duration, and the common issues between the civil and criminal cases against Wells and PPC are apparent. This factor also weighs in favor of a stay. See Jones, 2005 WL 1287017, at *2 ("Staying the case makes efficient use of judicial resources by insuring that common issues of fact will be resolved and subsequent civil discovery will proceed unobstructed by concerns regarding self-incrimination") (internal citations omitted).

### 4. No Interests of Persons Not Parties to this Action Will Be Affected By A Stay, and the Public Interest Favors a Stay of Proceedings.

There are no third party interests that are limited, frustrated, or defeated by the Court granting the limited stay requested in this motion. The interest of persons not parties to this action will not be affected by a stay, as there are no non-parties with an interest in the action. Simultaneously, the public's interest weighs in favor of this Court entering a stay. The public has an interest in "ensuring that the criminal process is not subverted by ongoing civil cases." Douglas v. United States, 2006 WL 2038375 (N.D. Cal. July 17, 2006). Moreover, "the public's interest in the integrity of the criminal case is entitled to precedence over the civil litigant." Jones, 2005 WL 1287017 at *2.

Absent a stay, this case will proceed to evidentiary proceedings on the FTC's claims for contempt against Wells and PPC parallel to a criminal case against the same parties. As explained above, this scenario leaves Wells and PPC no reasonable opportunity to offer a defense. Such an outcome also does not further the public's interest in a justice system that provides a viable means of securing the fair resolution of civil and criminal matters. Conversely, a stay would promote the public interest by providing Wells and PPC with a meaningful opportunity to exercise their constitutional rights and present a full and complete defense to the FTC's contempt action.

### B. The Court's Stay of Proceedings Regarding PPC is Appropriate as Well.

The Court should stay the civil proceedings as to PPC as well. Wells is the sole member

of PPC and the only person through whom this entity can present a meaningful defense to allegations by the FTC (Monroe Decl. ¶ 9). It will be difficult, if not impossible, for PPC to respond to written discovery requests, provide deposition testimony, prepare for Court proceedings, and present a full and complete defense without the active participation, involvement and testimony of Wells, the primary individual with first-hand knowledge of the facts in dispute. Wells will be unable to provide that assistance while the criminal investigation is pending – at least not without waiving his Fifth Amendment rights.

Precedent supports the stay covering both Wells and PPC. In Taylor, Bean & Whitaker Mort. Corp. v. Triduanium Fin'l, 2009 WL 2136986 *4 (E.D. Cal. July 15, 2009), the Court stayed civil proceedings against both individual and entity defendants. While acknowledging that the business entity had no Fifth Amendment right against self-incrimination, the Court nonetheless held that the Fifth Amendment rights of every director or officer who may speak on behalf of the corporate defendant are implicated, and thus it is likely to be greatly prejudiced in its ability to meaningfully defend itself in the civil matter. Taylor, Bean & Whitaker Mort. Corp., 2009 WL 2136986 at *3.

Similarly, in American Express Bus. Fin. Corp v. RW Prof'l Leasing Serv. Corp., 225 F. Supp. 2d 263 (E.D.N.Y. 2003), the district court granted a stay of civil discovery as to the two individual defendants to allow them to preserve their Fifth Amendment rights. American Express, 225 F. Supp. 2d at 265. The district court also stayed civil discovery as to the entity defendant, reasoning that the entity defendant would be unable to effectively conduct discovery and mount a defense without the availability of the individual defendants, each of whom were executive officers of the defendant corporation. Id. at 265-66; see also Bruner Corp v. Balogh, 819 F. Supp. 811 (E.D. Wis. 1993) (finding that "it is not likely" that the entity defendant "could proceed to trial without meaningful discovery from "the individual defendant alleged to be part of the RICO enterprise"), rev'd in part on other grounds, 133 F.3d 491 (7th Cir. 1998). Like Wells, PPC will be unable to mount a meaningful defense without the assistance of Wells. Accordingly, a stay of this action is warranted as to PPC as well.

EMERGENCY MOTION TO STAY DEPOSITIONS AND FURTHER PROCEEDINGS - 12

### III. CONCLUSION

Wells and PPC's participation in the FTC's depositions almost automatically results in the waiver of Wells's Fifth Amendment rights. Against the background of an ongoing criminal investigation, Wells's participation in the FTC's contempt proceedings—premised on the same activity being criminally investigated—necessarily will yield information that would otherwise be protected from disclosure by the Fifth Amendment. Alternately, to preserve his Fifth Amendment rights, Wells and PPC may decline to engage in the FTC's proceedings, resulting in them surrendering their rights before this Court regardless of the underlying merits of the FTC's allegations.

Most immediately, the Court should enter a protective order staying the currently noticed depositions of Wells and PPC for October 11 and 12, 2018. Based on the facts before the Court, Wells and PPC respectfully request that it enter a brief stay of proceedings in this action until the earlier of the resolution of any criminal action to be brought against Wells and PPC, or 180 days from the Court's order. Absent such judicial relief, Wells and PPC will face prospect of the loss of their rights, whether by asserting their Fifth Amendment privileges and being crushed by the FTC in this action, or waiving such rights and irretrievably losing their constitutional protections in the face of an ongoing criminal investigation and impending indictment.

Dated this 1st of October, 2018.

*/s/ J. Malcolm DeVoy*
J. Malcolm DeVoy
Erica A. Bobak

Theodore F. Monroe
(*pro hac vice* forthcoming)

*Attorneys for Defendant Thomas Wells and Third Party Priority Payout, Corp.*

EMERGENCY MOTION TO STAY DEPOSITIONS AND FURTHER PROCEEDINGS - 13

## CERTIFICATE OF SERVICE

I, the undersigned employee of DeVoy Law P.C., certify that the foregoing was served on the 1st day of October, 2018, via the Court's cm/ecf system, which generated a notice of electronic filing and distributed the foregoing **EMERGENCY MOTION FOR PROTECTIVE ORDER TO STAY DEPOSITIONS OF THOMAS WELLS AND PRIORITY PAYOUT, AND STAY FURTHER DISCOVERY AND PROCEEDINGS** and all attachments thereto to all counsel of record to have appeared in the above-titled action, including the following:

Andrew Hudson, Esq.
Karen Hobbs, Esq.
Federal Trade Commission
Bureau of Consumer Protection | Division of Marketing Practices
600 Pennsylvania Avenue, NW | Mailstop CC-8528
Washington, D.C. 20580
Tel: (202) 326-2213 | Fax: (202) 326-3395
*Attorneys for Plaintiff.*
Federal Trade Commission

_____
April L. Quintana,
an employee of DeVoy Law P.C.

EMERGENCY MOTION TO STAY DEPOSITIONS AND FURTHER PROCEEDINGS - 14